<p style="text-align:center; color:red;">**FILED UNDER SEAL**</p>

<p style="text-align:center;">**UNITED STATES DISTRICT COURT**<br>**DISTRICT OF MINNESOTA**</p>

| | |
|---|---|
| **ITASCA IMAGES, LLC**,<br>a Minnesota limited liability company, and<br><br>**TONY WEBSTER**,<br>a Minnesota resident,<br><br>       Plaintiffs,<br><br>v.<br><br>**SHUTTERSTOCK, INC.**,<br>a Delaware corporation,<br><br>**RTB HOUSE, INC.**,<br>a Delaware corporation,<br><br>**RTB HOUSE S.A.**,<br>a Poland joint-stock company,<br><br>**CIVICPLUS, LLC**,<br>a Kansas limited liability company,<br><br>**ARCHETYPE INNOVATIONS, LLC**,<br>a Minnesota limited liability company,<br><br>**CRAZY HOUSE MEDIA, LLC**,<br>a Minnesota limited liability company,<br><br>**DOES 1–500**,<br><br>       Defendants. | Case No. 21-cv-287 (JRT/DTS)<br><br>**FIRST AMENDED**<br>**COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u><br><br>1) Copyright Infringement<br> (17 U.S.C. § 501)<br><br>2) False Copyright Management<br> Information<br> (17 U.S.C. § 1202(a))<br><br>3) Removal or Alteration of<br> Copyright Management<br> Information<br> (17 U.S.C. § 1202(b))<br><br>4) Contributory and Vicarious<br> Copyright Infringement<br><br>5) Declaratory Judgment for<br> Non-Eligibility of 17 U.S.C.<br> § 512(c) DMCA Safe Harbor<br><br>6) Declaratory Judgment for Non-<br> Ownership of Copyrighted Works<br><br>7) Declaratory Judgment for<br> License Invalidity |

Plaintiffs Itasca Images, LLC and Tony Webster allege against Defendants Shutterstock, Inc., RTB House, Inc., RTB House S.A., CivicPlus, LLC, Archetype Innovations, LLC, Crazy House Media, LLC, and Does 1–500:

**FILED UNDER SEAL**

## INTRODUCTION

1.    Shutterstock was once known as being a leading stock photography company, selling imagery to everyone from bloggers to corporate advertisers to Hollywood movie producers. But in recent years, Shutterstock has developed a very different reputation: distributing stolen photography without the permission of the true artist, and then once caught, doing nothing to terminate the illegal licenses they granted and keeping all the profits, all while falsely claiming the 17 U.S.C. § 512(c) DMCA safe harbor to deter victims from pursuing their rights. That ends now.

2.    Plaintiff Itasca Images, LLC is the studio of photographer Tony Webster, an artist and photojournalist who was shocked to find Shutterstock offering to sell over 100 timely-registered copyrighted photographs he created at great investment of time, cost, and creative energy, most of which are artistic nature scenes from Northern Minnesota, which Shutterstock added their logo to and copied and distributed without permission, *e.g.*:



FILED UNDER SEAL

3.      Shutterstock displayed Plaintiffs' photographs on their website and offered to sell licenses to third-parties, along with downloadable copies of the work. Shutterstock distributed the photographs to partners and resellers, including a company in China who offered to sell the images for as little as 29 cents each. Shutterstock also used Plaintiffs' photographs in advertisements, including on the Minneapolis *Star Tribune* website. And Shutterstock programmed their website to falsely tell search engines like Google that Shutterstock's website was the authoritative place to buy the photographs.

4.      In March 2020, Plaintiffs sent a letter to Shutterstock: "We demand you (and anyone you provided to the photographs to) immediately cease and desist…" But Shutterstock did nothing. Shutterstock at this point had full knowledge that they were distributing stolen photographs, but they continued displaying, distributing, and offering them for sale. Worse, Shutterstock knew they sold and distributed stolen photographs to others and had made representations and warranties of noninfringement for, but Shutterstock didn't tell the persons they sold the stolen photographs to that they needed to stop using them.

5.      In September 2020, Plaintiffs sent Shutterstock another letter: "We again demand you immediately cease and desist all use, copying, display, licensure, offering for download, or sale … [and] instruct anyone you have sold the photographs or licenses to the photographs to cease display and infringement." This time, a Shutterstock employee using a fake name responded claiming the immunity of the 17 U.S.C. § 512(c) DMCA safe harbor, and—knowing Shutterstock had sold stolen photographs and that the photographer was demanding Shutterstock tell the persons they sold the stolen photographs to that they

FILED UNDER SEAL

needed to stop—Shutterstock continued distributing the photographs. And they let the illegally issued licenses stand, and didn't tell anyone to stop using the images.

6.    In December 2020, Plaintiffs found yet another photograph being offered for sale by Shutterstock, and sent another cease-and-desist letter, but Shutterstock again did nothing and continued offering that photograph for sale. Plaintiffs sued Shutterstock in February 2021, but they continued to distribute the photographs. In fact, Plaintiffs found Shutterstock continuing to infringe some of the photographs in May 2021.

7.    Shutterstock's response to this lawsuit has been that of distractions, lies, gaslighting, and threats. At first, Shutterstock claimed to have never received the March 2020 letter, Shutterstock telling the Court: "Shutterstock did not receive such letters or any sort of notice." That was a knowingly false statement. A subpoena revealed the truth: Shutterstock's general counsel and their top in-house intellectual property attorney, who served as their DMCA designated agent, both opened and accessed that letter in March 2020. Shutterstock's top in-house intellectual property lawyer re-opened and re-accessed that letter in February and March 2021 after this suit was commenced, shortly before Shutterstock claimed again to have never seen it.

8.    Shutterstock has claimed the immunity of the 17 U.S.C. § 512(c) DMCA safe harbor, pointing the finger at their Shutterstock Contributors in Russia and Bangladesh. But Shutterstock's business model precludes them from claiming the safe harbor, as Shutterstock curates the images they sell, rejecting images they deem low-quality, out of focus, crooked, or not commercially valuable. In a continuation of Shutterstock's lying, Shutterstock's attorney claimed they terminated the Shutterstock Contributor(s) in Russia

FILED UNDER SEAL

they claim to have sourced most of the photographs from after they received Plaintiffs' September 2020 letter, but discovery in this case has revealed Shutterstock terminated that Contributor in 2019, and Shutterstock continued to display, distribute, and offer those images for sale in 2020 and even 2021. Shutterstock's infringement was not at the direction of the user, they had red flag knowledge, they had actual knowledge, and *a year* or more is not expeditious removal. They have no safe harbor; they never did. Nevertheless, Shutterstock's attorney threatened that Plaintiffs will "die on a hill protected by the DMCA," and that "we [Shutterstock] could easily make life difficult." And now, almost seven months into the case, Shutterstock—a company that displays images for the purposes of selling those very images for commercial profit—wants to claim fair use.

9.      Shutterstock's infringement, at least through their partners and distributors, continues as of this week. Their behavior is the pinnacle of willful copyright infringement. Nothing short of maximum damages and declaratory and injunctive relief will send a message to Shutterstock that compliance with laws is not optional.

10.      This complaint also brings claims against to whom Shutterstock sold licenses for or distributed some of the Photographs to. On information and belief, Shutterstock is indemnifying and defending some or all of them, or is required to by agreement.

**PARTIES**

11.      Plaintiff Itasca Images, LLC (hereafter "Itasca") is a Minnesota limited liability company, with its principal place of business in Hennepin County, Minnesota.

12.      Plaintiff Tony Webster (hereafter "Webster") is an adult individual who resides in Minnesota and is Itasca's Managing Member. Mr. Webster created all the

FILED UNDER SEAL

Photographs in suit. Mr. Webster is a photographer and photojournalist and is a member of the American Society of Media Photographers, National Press Photographers Association, Professional Photographers of America, and Society of Professional Journalists. Itasca and Mr. Webster are hereafter individually each a "Plaintiff" and collectively the "Plaintiffs."

13.     Defendant Shutterstock, Inc. ("Shutterstock") is a Delaware corporation, with its principal place of business in New York, New York. Shutterstock is registered with the Minnesota Secretary of State, file no. 707548300022.

14.     Defendant RTB House, Inc. is a Delaware corporation, with its principal place of business in New York, New York. Defendant RTB House Spółka Akcyjna (S.A.), is a Poland joint-stock company with operations in New York, Boston, and Chicago. They are both referenced hereafter individually and collectively as "RTB House." They do business in Minnesota.

15.     Defendant CivicPlus, LLC ("CivicPlus") is a Kansas limited liability company with its principal office in Manhattan, Kansas. CivicPlus is registered with the Minnesota Secretary of State, file no. 1106270900057.

16.     Defendant Archetype Innovations, LLC ("Archetype") is a Minnesota limited liability company with its principal office in Duluth, Minnesota.

17.     Defendant Crazy House Media, LLC ("Crazy House Media") is a Minnesota limited liability company with its principal office in Maple Grove, Minnesota.

18.     Defendants Does 1–500 are parties whose identities are currently unknown to Plaintiff, including those who Shutterstock unlawfully licensed or distributed the

FILED UNDER SEAL

photographs in suit to, who displayed the photographs as the result of Shutterstock's distribution, who may have provided images to Shutterstock, or otherwise participated in the infringement scheme. Plaintiffs intend to amend this Complaint once such identities become known.

## JURISDICTION AND VENUE

19.     This action arises under the Copyright Act, 17 U.S.C. § 101, *et seq*.

20.     This Court has jurisdiction over this action pursuant to 27 U.S.C. § 1331 as a federal question, and original jurisdiction pursuant to 27 U.S.C. § 1338(a) as arising from an Act of Congress relating to copyrights.

21.     This Court has personal jurisdiction, and venue is proper here, because Shutterstock has consented to personal jurisdiction in this district by registering with the Minnesota Secretary of State as a foreign corporation and appointing a registered agent here. Shutterstock does substantial business in Minnesota through selling photography, copies of photography, photography licenses, and subscriptions to Minnesota consumers and businesses. The Court has personal jurisdiction over the RTB House defendants because they displayed and distributed the photographs in suit specifically into the forum, via display on the Minneapolis *Star Tribune* newspaper website. The Court additionally has personal jurisdiction over the CivicPlus, Archetype, and Crazy House Media defendants because they are registered with the Minnesota Secretary of State and their registered agents can be found here.

22.     Personal jurisdiction and venue as to all defendants is further proper because: (1) the majority of the photographs in suit were created in Minnesota; (2) the infringement

FILED UNDER SEAL

injured a Minnesota limited liability company and Minnesota resident; (3) Shutterstock and others who participated in the infringement scheme knew the creator of the photographs was a Minnesota resident; (4) Shutterstock offered to sell, and did sell, Plaintiffs' photographs into Minnesota; (5) Shutterstock served and offered the digital image files which represent copies of Plaintiffs' photographs from a server physically located in Minnesota; and (6) Shutterstock has at least one employee who resides in and works from Minnesota.

## FACTS

## I.     The Photographs

23.     This action involves 113 photographs, which are identified in the list attached hereto as **Exhibit A** and incorporated as if set forth fully herein; each individually hereafter a "Photograph" and collectively the "Photographs."

24.     Each of the Photographs was deposited with the U.S. Copyright Office and registration issued with an effective date within three months of first publication.

25.     The Photographs are registered across eight U.S. Copyright Office group registrations of published photographs ("GRPPH"), registration numbers: VA 2-229-733, VA 2-147-626, VA 2-147-455, VA 2-143-906, VA 2-142-502, VA 2-133-850, VA 2-133-848, and VA 2-129-807, which are referenced hereafter individually each as a "Registration" and collectively as the "Registrations." Attached hereto as **Exhibit B** are copies of the certificates for each of the Registrations.

26.     The majority of the Photographs were created in Minnesota.

27.     The Registrations have been assigned to Plaintiff Itasca Images, LLC.

FILED UNDER SEAL

28.     Some of the Photographs in suit, as infringed by Defendants, were flipped (*i.e.*, a mirror or reverse image), oversaturated in color, or with a red-pink tint applied. As used in the remainder of this complaint, the term "Photograph(s)" includes all versions thereof, including modified or resized versions.

## II.     Infringement of the Photographs

### a.     Shutterstock displayed the Photographs on their website and offered them for distribution and sale

29.     Shutterstock owns and controls the domain name and website SHUTTERSTOCK.COM (the "Shutterstock Website" or "Shutterstock's Website").

30.     The Shutterstock Website has a commercial purpose.

31.     Shutterstock sells downloadable image files.

32.     Shutterstock sells copies of photographs.

33.     Shutterstock sells digital reproductions of photographs.

34.     Shutterstock sells licenses to photographs.

35.     Shutterstock sells subscriptions which allow their customers to download and obtain licenses to use photographs.

36.     Shutterstock obtains a financial benefit from the images available for license on the Shutterstock Website.

37.     Shutterstock is an image distributor.

38.     Shutterstock displayed each of the Photographs.

39.     Shutterstock made copies of each of the Photographs.

40.     Shutterstock added their logo to each of the Photographs.

FILED UNDER SEAL

41.    Shutterstock added their logo to each of the Photographs as a watermark.

42.    Shutterstock distributed each of the Photographs.

43.    Shutterstock offered each of the Photographs for download.

44.    Shutterstock offered to make copies of the Photographs for others.

45.    Shutterstock offered the Photographs to others for financial gain.

46.    Shutterstock offered the Photographs for its own business advantage.

47.    Shutterstock offered licenses allowing others to copy the Photographs.

48.    Shutterstock allows consumers to access and license images.

49.    Shutterstock makes content available to consumers via license.

50.    Shutterstock offered each of the Photographs for sale.

51.    By way of example, Plaintiffs created a photograph depicting the Kettle River in Minnesota at sunset (the "Kettle River Photo") and Shutterstock offered it for sale on the Shutterstock Website:



**FILED UNDER SEAL**

52.     Examples of Shutterstock's infringement are attached hereto as **Exhibit C**.

53.     Shutterstock did not have the right to copy, display, distribute, or offer for sale any of the Photographs.

54.     Shutterstock did not link to Plaintiffs nor any location where Plaintiffs published the Photographs in their use of the Photographs.

55.     As of early September 2020, Shutterstock displayed the Photographs below other photographs on their website as being "similar image(s)."

56.     Shutterstock stored a copy of the Photographs on Amazon S3.

57.     Shutterstock stored a copy of the Photographs on web server(s).

58.     Shutterstock did not have the right to offer any of the Photographs for download or to make copies of the Photographs for others.

59.     JPEG is a common file type for images including photographs and may also be referred to as "JPG" or "image/jpeg".

60.     Images can be copied as JPG files.

61.     By way of example, Shutterstock offered to initiate a file transfer via web browser of a downloadable JPG file of the Kettle River Photo.

62.     Shutterstock made high-resolution copies of each of the Photographs.

63.     Shutterstock also resized some of the Photographs, including making copies with the longest side of the image being 1,500 pixels.

64.     An image with its longest side measuring 1,500 pixels is high resolution.

65.     Shutterstock uses the name "PictureFrame_highRes_img" to refer to a location on its website where Shutterstock displayed the Photographs.

FILED UNDER SEAL

66.    "highRes" as used by Shutterstock means high resolution.

67.    Shutterstock copied the entirety of the Photographs.

68.    Shutterstock did not provide any credit or attribution in its copying, use, or distribution of the Photographs.

69.    Shutterstock did not display or distribute Plaintiffs' copyright notices.

70.    Shutterstock did not have a license or any other authorization from Tony Webster with respect to any of the Photographs.

71.    Shutterstock did not have a license or any other authorization from Itasca Images, LLC with respect to any of the Photographs.

72.    Shutterstock claimed that each of the Photographs were their intellectual property.

73.    Shutterstock added a copyright notice below each of the Photographs which stated: "© 2003-2020 Shutterstock, Inc." or "© 2003-2021 Shutterstock, Inc."

74.    Shutterstock made representations and warranties to third parties that it had "all necessary rights in and to" the Photographs.

75.    Shutterstock did not have all necessary rights in and to the Photographs.

76.    Shutterstock made representations and warranties that its customers' use of the Photographs would not infringe any copyright or violate any United States law.

77.    Shutterstock collects data regarding every visit to each page which displays the images they sell, including by use of Google Analytics.

FILED UNDER SEAL

**b.**   **Shutterstock removed Plaintiffs' copyright management information from the photographs and distributed the photographs with falsified copyright management information with their own copyright notices**

78.   Each of the Photographs were originally published online by Plaintiff(s) with a visible copyright notice immediately below the Photographs which stated the photographer's name "Tony Webster" and "©" and "All rights reserved." Some of the Photographs also had an additional copyright notice visible below the Photographs, which stated, *e.g.*, "© 2018 Tony Webster."

79.   Each of the Photographs was captured with professional camera equipment configured to embed the photographer's name and a copyright notice into the metadata of digital imagery files at the time of capture.

80.   After the Photographs were captured but before they were originally published, additional metadata was added to each of the Photographs, such as descriptions of what the Photographs depict and where the Photographs were taken; keywords; geographical coordinates; and copyright management information ("CMI") such as the photographer's name, city, state, email address, website link, publication date, credit line text, and copyright notices.

81.   Exchangeable Image File Format ("EXIF") is an industry standard metadata format used to include information about a photograph including copyright management information.

82.   International Press Telecommunications Council ("IPTC") is an industry standard metadata format used to include information about a photograph including copyright management information.

FILED UNDER SEAL

83.     All of the Photographs included EXIF and IPTC metadata.

84.     EXIF metadata can contain, *inter alia*, information regarding the camera and lens make and model, exposure information like aperture and shutter speed, data documenting the timestamp and location of a photograph's capture, artist's name, copyright notices, and CMI.

85.     By way of example, the EXIF metadata of the Kettle River Photo included:

| Artist | Tony Webster |
|---|---|
| Copyright | © 2018 Tony Webster |

86.     IPTC metadata can include, *inter alia*, information describing a photograph, such as a title, description, captions, or keywords, geographical information, the photographer's name and contact information, copyright notices, and CMI.

87.     By way of example, IPTC metadata in the Kettle River Photo included:

| Title | Maple Island Sunset on the Kettle River |
|---|---|
| Description | The Kettle River winds through St. Croix State Park, as seen from the Maple Island Landing on a winter afternoon sunset. |
| Keywords | Kettle River, Maple Island, Maple Island Landing, Minnesota, Saint Croix State Park, St. Croix State Park, cold, ice, river, river landing, snow, state park, sunset, winter |
| State | Minnesota |
| Artist | Tony Webster |
| Copyright Notice | © 2018 Tony Webster |
| Usage Terms | Copyright (c) 2018 Tony Webster. All rights reserved. |

**FILED UNDER SEAL**

| Copyright Flag | True |
|---|---|
| Creator Region | Minnesota |
| Creator Work Email | tony@tonywebster.com |
| Creator Work Telephone | +1 202-930-9200 |

88.     Copyright notices in metadata are a standard measure used by copyright owners to identify and protect their copyrighted works.

89.     Metadata is a standard technology used by the stock photography industry.

90.     Copyright management information in EXIF metadata is a standard technical measure used by copyright owners to identify or protect copyrighted works.

91.     Copyright management information in IPTC metadata is a standard technical measure used by copyright owners to identify or protect copyrighted works.

92.     Copyright management information in EXIF and IPTC metadata have been developed pursuant to a broad consensus of copyright owners and service providers in an open, fair, voluntary, multi-industry standards process.

93.     Prior to February 2, 2021, Shutterstock possessed at least one file which contained the following text in the metadata: "Copyright (c) 2018 Tony Webster."

94.     Any person can use EXIF and IPTC metadata on reasonable and nondiscriminatory terms.

95.     Copyright management information in EXIF and IPTC metadata do not impose substantial costs on service providers or substantial burdens on their systems or networks.

FILED UNDER SEAL

96.     Shutterstock removed the title and other information identifying each of the Photographs in the metadata of those works and in their display and distribution of them.

97.     Shutterstock removed the name of the author from the metadata in versions of the Photographs they displayed and distributed.

98.     Shutterstock added its own CMI to the metadata of versions of the Photographs they distributed.

99.     Shutterstock added their own copyright notices to the metadata of versions of the Photographs they distributed.

100.    Shutterstock added the following to the metadata of versions of some of the Photographs they distributed: "Copyright (c) 2020 Shutterstock.   No use without permission."

101.    A watermark containing a company name is CMI.

102.    Former Shutterstock lawyer Sejal Patel has said that a "way to protect your images is to add your copyright information to the metadata," but that "unauthorized users of your images could scrub this information out of the metadata."

103.    Shutterstock scrubbed Plaintiffs' copyright information from the metadata of the Photographs.

104.    Shutterstock distributed versions of the Photographs with their own copyright notices embedded within them.

105.    Shutterstock distributed versions of the Photographs with their logo watermark placed on top.

FILED UNDER SEAL

c.      **Shutterstock allowed the photographs to be manipulated and offered to sell derivative works of the images**

106.    Shutterstock made all of the Photographs in suit available to be edited via the Shutterstock Editor application on the Shutterstock Website.

107.    Shutterstock's Website stated: "Annual plans come with Shutterstock Editor Pro, so that you can revise images to suit your creative needs."

108.    Shutterstock describes Shutterstock Editor as a "simple, fast, and free way to edit photos."

109.    Shutterstock Editor modifies images.

110.    The Shutterstock Editor allowed derivative works of Plaintiffs' Photographs to be created, saved, distributed, and downloaded.

111.    When an image was loaded in the Shutterstock Editor, Shutterstock shows the image with various filters applied.

112.    By way of example, one of Plaintiffs' Photographs in the Shutterstock Editor appeared with the following options presented to the Shutterstock Website visitor:



FILED UNDER SEAL

**d.    Shutterstock allowed Plaintiffs' Photographs to be viewed in customers' homes or businesses as wall art through augmented reality experiences, and offered licenses to print the Photographs for commercial use**

113.    The Shutterstock iPhone application allowed Plaintiffs' Photographs to be previewed in homes or businesses as wall art via use of augmented reality software. This software allowed the use of a feature in the Shutterstock iPhone app, which launched the device's camera, scanned the room, and then virtually placed the Photograph on a blank surface in that room's physical environment, as seen on the phone screen. Shutterstock also offered licenses allowing images to be printed as physical artworks.

**e.    Shutterstock distributed the Photographs to distributors, resellers, affiliates, and business partners**

114.    Shutterstock provided copies of the Photographs to various distributors, affiliates, resellers, and business partners, who used, copied, and displayed them.

115.    Shutterstock provided the Photographs, or versions thereof, to a company named either ZCool or HelloRF (hereafter interchangeably referred to as "ZCool" or "HelloRF"), who operates the website <https://www.hellorf.com/>.

116.    Shutterstock transferred versions of the Photographs to HelloRF.

117.    Shutterstock provided the Photographs, or versions thereof, to a company which operates the website <https://avopix.com/> ("Avopix").

118.    The images on the Avopix Website, including the Photographs, were served from computer servers or networks physically located in Minnesota.

FILED UNDER SEAL

119.   Shutterstock provided the Photographs, or versions thereof, to a company which operates the website <http://shutterstock.puzzlepix.hu/> ("PuzzlePix").

120.   Shutterstock has entered into a contractual agreement with ZCool.

121.   Shutterstock has entered into a contractual agreement with ZCool which relates or refers to the sale or distribution of images.

122.   The PuzzlePix Website stated they are an authorized Shutterstock Partner.

123.   ZCool is a distributor of Shutterstock.

124.   Shutterstock exported the Photographs out of the United States.

125.   HelloRF displayed the Photographs, or versions thereof, and offered the Photographs, or versions thereof, for sale.

126.   Avopix displayed, used, copied, and offered to sell the Photographs.

127.   PuzzlePix displayed, used, copied, and offered to sell the Photographs.

128.   Shutterstock has entered into a contractual agreement with PuzzlePix and with Avopix.

129.   Facebook allows marketers and business owners to create advertisements which are displayed to persons with a Facebook account in a web browser or mobile app. These advertisements can be created via the Facebook Ad Center on the Facebook website.

130.   When creating a Facebook Ad, Facebook prompts the advertiser to add one or more images to their advertisements and offers images from Shutterstock to select from.

131.   Shutterstock has a business relationship with Facebook.

132.   Shutterstock allowed Facebook advertisers to access, view, search, display, and use images in Facebook advertisements, including the Photographs in suit.

**FILED UNDER SEAL**

133.   Wix.com is a website builder for small businesses.

134.   Shutterstock offered Plaintiffs' Photographs to Wix.com.

135.   Plaintiffs' Photographs were available in the Wix.com editor for businesses to copy, use, and display on their websites, at Shutterstock's direction.

136.   Shutterstock has entered into a contractual agreement with Wix.

137.   Examples of infringement by persons Shutterstock distributed the Photographs to are attached hereto as **Exhibit D**.

**f.     Shutterstock entered into a partnership with TinEye to direct searches for Plaintiffs' Photographs directly to Shutterstock**

138.   TinEye is a website which offers a reverse image search service.

139.   TinEye can be used to find the copyright owner of a given photograph.

140.   Shutterstock has entered into a contractual relationship with TinEye.

141.   Shutterstock placed the Photographs in advertisements which appeared above the Photographs in search results in TinEye's website.

142.   Shutterstock caused searches for Plaintiffs' Photographs on TinEye to be directed to the Shutterstock website.

143.   Shutterstock gave TinEye access to the Photographs.

144.   Shutterstock distributed the Photographs to TinEye.

145.   The Photographs appear on TinEye with Shutterstock's logo on them.

146.   By way of example, when searching for one of Plaintiffs' Photographs on TinEye, the top of the page shows:

**FILED UNDER SEAL**



STOCK · SPONSORED
**www.shutterstock.com**
**pic-1851646171/stock-photo-minnesota...**
- First found on Nov 16, 2020

**Get 10% off** at
Shutterstock by using
10TINEYE at checkout.

147.   Shutterstock caused Plaintiffs' Photographs to be displayed by TinEye.

148.   Shutterstock falsely represented itself as the copyright owner of Plaintiffs'
Photographs on the TinEye website.

149.   Shutterstock is a customer of TinEye.

150.   TinEye is a Shutterstock affiliate.

151.   TinEye has access to Shutterstock's API to run its reverse image technology
on Shutterstock's systems.

152.   Shutterstock has access to use TinEye's reverse image search service.

**g.      Shutterstock distributed the Photographs through their API**

153.   Application programming interfaces ("API" or "APIs") are computing
interfaces which allow computer systems or services to communicate with each other.

154.   Shutterstock offers an API as a service which software developers can
integrate into software programs, websites, and workflows which require or would be aided
by stock photography.

155.   Shutterstock provides pricing to their customers who desire to integrate the
Shutterstock API with their software or website. By way of example, Shutterstock offers a
plan with an annual commitment for 250 images per month for $499 per month, which

FILED UNDER SEAL

Shutterstock advertises with the text "$1.99 per image." Shutterstock also offers custom plans for large accounts.

156.   Shutterstock's API responses include URLs to image files.

157.   Shutterstock uses the term "asset" to describe a single photograph, illustration, or video they offer for sale.

158.   Shutterstock has an API endpoint which uses the URL "https://www.shutterstock.com/studioapi/images/#", where # represents a Shutterstock-assigned asset ID number.

159.   Shutterstock has an API endpoint which accepts a Shutterstock ID number as an input and outputs URLs to JPG files of the image the ID number referenced.

160.   Shutterstock distributed Plaintiffs' Photographs to third parties through its API.

161.   Shutterstock's API terms of service include Shutterstock's grant to third parties of a license to "make the Content available to Users of your Application."

162.   Shutterstock's API terms of service require their API customer to incorporate the Shutterstock watermark on any "Preview Content."

163.   Shutterstock's API terms of service state: "The Platform interfaces through which Preview Content is accessed shall include a conspicuous attribution in substantially the following form: "Powered by Shutterstock"."

164.   The phrase "Powered by Shutterstock" appeared in JPG files of Plaintiffs' Photographs. By way of example, one of the Photographs distributed by HelloRF was:

FILED UNDER SEAL



www.hellorf.com - 1310357629                    Powered by Shutterstock

165.   The phrase "Powered by Shutterstock" is CMI.

166.   Shutterstock offered links to image files of Plaintiffs' Photographs through its responses to API requests.

**h.   Shutterstock distributed the photographs to be used in advertising**

167.   Shutterstock advertises the images they sell.

168.   Shutterstock used the Photographs in advertisements for Shutterstock.

169.   Shutterstock provided the Photographs to third parties for use in advertising.

170.   RTB House and Criteo are both advertising companies.

171.   Shutterstock provided the Photographs to RTB House and to Criteo.

172.   RTB House stored the Photographs on their servers.

173.   The Photographs appeared in Shutterstock advertisements on the Minneapolis *Star Tribune* website.

174.   The Photographs appeared in Shutterstock advertisements on Flickr.

175.   The Photographs, as they appeared in Shutterstock advertisements, were served from RTB House's server(s). The URLs on RTB House's server(s) referenced Shutterstock-assigned ID numbers for the Photographs.

**FILED UNDER SEAL**

176.   RTB House intentionally copied, displayed, and distributed the Photographs.

177.   RTB House intentionally copied, displayed, and distributed at least some of the Photographs as part of its exploitation of the Minnesota market for its own commercial gain.

178.   The harm from RTB House's copying, display, and distribution of the Photographs occurred in Minnesota, and pursuant to an agreement with the *Star Tribune*.

179.   The *Star Tribune*'s website receives more than 14,000,000 visitors in the typical month.

180.   Examples of Shutterstock's and RTB House's infringement is attached hereto as **Exhibit E**.

> **i.**   **Shutterstock programmed its website to declare to search engines that it was the authoritative place to buy Plaintiffs' Photographs, thereby drawing attention away from Plaintiffs' online presence**

181.   Many shoppers of photography or photography licenses use search engines like Google, including specifically Google Images.

182.   Shutterstock calls the main webpage in which they display a photograph they offer for sale the Asset Detail Page. The Asset Detail Page URL contains a Shutterstock-assigned Asset ID number and states the Asset ID number on the page.

183.   Shutterstock placed structured data, also known as microdata ("Structured Data"), in HTML markup on pages (like Asset Detail Pages) which displayed the Photographs.

184.   Websites, such as Google, read and interpret Structured Data.

**FILED UNDER SEAL**

185.    Shutterstock has optimized their website and web pages with the intention of being placed in search engine results pages ahead of other websites and web pages.

186.    Stock photography companies like Shutterstock can place Structured Data in the markup of pages which display images available for license, which results in Google placing a "licenseable" badge over the image, also called a licenseable images feature.

187.    Shutterstock caused Google to place a "licensable" badge over Plaintiffs' Photographs on the Google Images website, which then linked to Shutterstock's Website. By way of example:



188.    Shutterstock described Google's licenseable badge feature as follows: "Google will highlight licensable images in the Google Images search results."

189.    Shutterstock stated Google Images results using the licenseable badge feature include "links to view the license details and visit the site where you can obtain a license."

190.    Google reads the 'license' and 'acquireLicensePage' properties in Structured Data on web pages. If the 'license' property is declared, Google displays a badge over an image in their search results which states "Licenseable" and provides additional links in search engine results to licensing details for the given image.

FILED UNDER SEAL

191.   By way of example, Shutterstock included the following Structured Data on a Detail Page which displayed one of Plaintiffs' Photographs:

```
"thumbnailUrl":"https://image.shutterstock.com/image-
photo/minnesota-usa-november-3-2020-260nw-1851646171.jpg",
"acquireLicensePage":"https://www.shutterstock.com/image-
photo/minnesota-usa-november-3-2020-dome-1851646171",
"license":"https://www.shutterstock.com/license"
```

192.   The 'thumbnailUrl' in the preceding paragraph was Plaintiffs' Photograph being served from Defendants' web server as a JPG file.

193.   The 'license' and 'acquireLicensePage' Structured Data properties are CMI.

194.   Providing a 'thumbnailUrl' in Structured Data instructs third parties to use and display the image represented in that URL to promote a given webpage.

195.   Third parties displayed Plaintiffs' Photographs on their own websites at the direction and facilitation of Shutterstock.

196.   Shutterstock's use of the licenseable badge feature promoted Shutterstock's stolen and infringed versions of Plaintiffs' Photographs for which Plaintiffs would never be compensated or credited, while causing a demotion to the online presence for Plaintiffs' use of the Photographs.

**j.   Shutterstock's illegal distribution to Archetype Innovations, LLC**

197.   Shutterstock assigned ID number 1310245423 to a photograph depicting the partially frozen Saint Louis River at Jay Cooke State Park in Minnesota, Reg. No. VA 2-133-850, 184E0149 Winter on the Saint Louis River, Minnesota (the "Saint Louis River Photo").

**FILED UNDER SEAL**

198.    Shutterstock offered to sell the Saint Louis River Photo to Archetype, or a representative thereof.

199.    Archetype, or a representative thereof, saw the Saint Louis River Photo on Shutterstock's website or through Shutterstock's services.

200.    Archetype, or a representative thereof, purchased a license to the Saint Louis River Photo on Shutterstock's website or through Shutterstock's services.

201.    Shutterstock provided Archetype, or a representative thereof, with access to a downloadable high-resolution copy of the Saint Louis River Photo.

202.    Archetype, or a representative thereof, downloaded a copy of the Saint Louis River Photo from Shutterstock.

203.    Shutterstock made a representation and warranty to Archetype, or a representative thereof, that their use of the Saint Louis River Photo would not infringe any copyright, trademark or other intellectual property right or violate any U.S. law.

204.    Shutterstock had no authority, license, or permission to use, copy, display, sell, or distribute the Saint Louis River Photo.

**k.    Shutterstock's illegal distribution to CivicPlus, LLC**

205.    Shutterstock assigned ID number 1310978075 to a photograph depicting a field at Wild River State Park in Minnesota, Reg. No. VA 2-129-807, 184D0440 Wild River State Park in Autumn, Minnesota (the "Wild River Field Photo").

206.    Shutterstock assigned ID number 1310245390 to a photograph depicting wetlands at Wild River State Park in Minnesota, Reg. No. VA 2-129-807, 184D0475 Winter Wetlands, Wild River State Park, Minnesota (the "Wild River Wetlands Photo").

FILED UNDER SEAL

207.   Shutterstock offered to sell the Wild River Field Photo and the Wild River Wetlands Photo to CivicPlus.

208.   A representative of CivicPlus saw the Wild River Field Photo and the Wild River Wetlands Photo on Shutterstock's website.

209.   CivicPlus, or a representative thereof, purchased a license to the Wild River Field Photo and the Wild River Wetlands Photo from Shutterstock

210.   Shutterstock provided CivicPlus, or a representative thereof, with access to a downloadable high-resolution copy of the Wild River Field Photo and the Wild River Wetlands Photo.

211.   CivicPlus's actions resulted in copies of the Wild River Field Photo and the Wild River Wetlands Photo being created, or a distribution thereof to occur, for their benefit.

212.   CivicPlus reproduced the Wild River Field Photo and the Wild River Wetlands Photo.

213.   Shutterstock granted licenses to the Wild River Field Photo and the Wild River Wetlands Photo to CivicPlus, or a representative thereof.

214.   Shutterstock granted a license to the Wild River Wetlands Photo to CivicPlus, or a representative thereof.

215.   Shutterstock made a representation and warranty to CivicPlus, or a representative thereof, that their use of the Wild River Field Photo and Wild River Wetlands Photo would not infringe any copyright, trademark or other intellectual property right or violate any U.S. law.

**FILED UNDER SEAL**

216.    Shutterstock had no authority, license, or permission to use, copy, display, sell, or distribute the Wild River Field Photo or Wild River Wetlands Photo.

**l.    Shutterstock's illegal distribution to Crazy House Media**

217.    Shutterstock assigned ID number 1356490727 to a photograph Reg. No. VA 2-133-850, 184E0048 Trees Along the Road - Lewis and Clark State Park, Iowa (the "Lewis and Clark Photo").

218.    Shutterstock offered to sell the Lewis and Clark Photo to Ryan Cunningham. Ryan Cunningham, and his spouse Kelly, manage Crazy House Media, LLC. Crazy House Media, LLC operates the website BeyondTheTent.com.

219.    Ryan Cunningham saw the Lewis and Clark Photo on Shutterstock's website.

220.    Ryan Cunningham purchased a license to the Lewis and Clark Photo from Shutterstock, for Crazy House Media, LLC's use.

221.    Shutterstock provided Ryan Cunningham and Crazy House Media, LLC with access to a downloadable high-resolution copy of the Lewis and Clark Photo.

222.    Ryan Cunningham and Crazy House Media, LLC downloaded a copy of the Lewis and Clark Photo from Shutterstock.

223.    Shutterstock granted a license to the Lewis and Clark Photo to Ryan Cunningham and Crazy House Media, LLC.

224.    Shutterstock made a representation and warranty to Ryan Cunningham and Crazy House Media, LLC that their use of the Lewis and Clark Photo would not infringe any copyright, trademark or other intellectual property right or violate any U.S. law.

**FILED UNDER SEAL**

225.    Ryan Cunningham and Crazy House Media, LLC made a copy of the Lewis and Clark Photo.

226.    Ryan Cunningham and Crazy House Media, LLC uploaded the Lewis and Clark Photo to a website they operate, BeyondTheTent.com.

227.    Ryan Cunningham and Crazy House Media, LLC displayed the Lewis and Clark Photo on the website BeyondTheTent.com. This website includes advertisements and affiliate links, and is a commercial enterprise which generates income.

228.    Shutterstock had no authority, license, or permission to use, copy, display, sell, or distribute the Lewis and Clark Photo.

229.    On or about March 4, 2021, Shutterstock sent an email to Ryan Cunningham under the subject line "Notice: Shutterstock license revocation" which stated "Hello, we are writing to you in connection with the Shutterstock image ID listed below. Per your license, we are writing to let you know that there is a legal claim related to this image, and therefore you must cease using this image any further ... Shutterstock image ID: 1356490727."

230.    The March 4, 2021 email from Shutterstock to Ryan Cunningham included an attached copy of the photograph assigned Shutterstock image ID number 1356490727.

231.    Ryan Cunningham received Shutterstock's March 4, 2021 email.

232.    Ryan Cunningham and Crazy House Media, LLC continued to use, copy, and display the Lewis and Clark Photo after March 4, 2021.

233.    In May 2021, Plaintiffs emailed Ryan Cunningham. Among other things, this email stated Shutterstock did not have permission to sell or license the photograph to

**FILED UNDER SEAL**

Cunningham, asked him to disable access to the photograph, and asked for cooperation such as providing documents.

234. In May 2021, Ryan Cunningham called Plaintiffs.

235. During the May 2021 telephone call, Ryan Cunningham stated that he runs about ten websites and that "this has happened before," and that he has had to deal with Shutterstock regarding disputes like this before.

236. During the May 2021 telephone call, Ryan Cunningham stated that Shutterstock does not do their due diligence.

237. During the May 2021 telephone call, Ryan Cunningham stated that he would take the Lewis and Clark Photo down.

238. During the May 2021 telephone call, Ryan Cunningham promised his cooperation, and promised to provide more information. However, he broke his promise and Plaintiffs never heard from him again.

239. As of August 27, 2021, Ryan Cunningham and Crazy House Media, LLC continued to copy and display the Lewis and Clark Photo.

240. Shutterstock and Crazy House Media's conduct is in violation of Plaintiffs' exclusive rights.

241. Crazy House Media's infringement is willful because, among other things: (1) they knew Shutterstock had a reputation for not doing due diligence prior to the purchase and use of the photograph and had experienced Shutterstock's infringement before; (2) they knew the photograph was infringed, and that their use was infringing, upon receipt of Shutterstock's March 4, 2021 email but continued to use it anyway; (3) they

FILED UNDER SEAL

knew the photograph was infringed, and that his use was infringing, upon receipt of Plaintiffs' May 2021 email but continued to use it anyway; and (4) they knew the photograph was infringed, and that his use was infringing, through the May 2021 telephone call, but continued to use it anyway.

## III. Shutterstock knew their use of the Photographs was infringing, but continued to display and distribute the photographs anyway

242. Shutterstock has claimed to have sourced some Photographs from a Shutterstock Contributor using the name "The Perfect" or "PhotoElite."

243. Shutterstock has claimed to have sourced some Photographs from a Shutterstock Contributor using the name "Perfect Photo."

244. Shutterstock assigned the Shutterstock Contributor named "The Perfect" or "PhotoElite" the Contributor ID number 173231604.

245. Shutterstock assigned the Shutterstock Contributor named "Perfect Photo" the Contributor ID number 173418454.

246. In 2019, Shutterstock disabled the account of Shutterstock Contributor IDs 173231604 and 173418454.

247. Shutterstock terminated the Contributors named "Perfect Photo" and "The Perfect" or "PhotoElite" in 2019.

248. Shutterstock continued to display, distribute, and offer to sell images they sourced from The Perfect, Photo Elite, Perfect Photo, or Contributor ID number 173418454, or Contributor ID number 173418454 in 2020 and even 2021.

FILED UNDER SEAL

249.   On March 2, 2020, Plaintiffs sent a cease-and-desist letter to Shutterstock via

Certified Mail at the following addresses (the "March 2020 Letter"):

> Shutterstock, Inc., Empire State Building, 350 Fifth Avenue, 21st
> Floor, New York, NY 10118;
>
> Sejal Patel, Shutterstock, Inc., 350 Fifth Avenue,
> 21st Floor, New York, NY 10118;
>
> Shutterstock, Inc., c/o Corporation Service Company,
> 251 Little Falls Drive, Wilmington, DE 19808; and
>
> Shutterstock, Inc., c/o Corporation Service Company,
> 2345 Rice Street, Suite 230, Roseville, MN 55113.

250.   The March 2020 Letter identified 111 of the Photographs.

251.   For each of the 111 Photographs listed in the March 2020 Letter, identified

was the: U.S. Copyright Office registration number, title, a copy of the original photograph,

a copy as Shutterstock was displaying it, and a URL to where each image was displayed

on Shutterstock's website.

252.   The March 2020 Letter included Shutterstock-assigned ID numbers for each

of the 111 photographs listed therein.

253.   Sejal Patel, also known as Sejal Patel Richbourg or Sejal Richbourg, was

Shutterstock's "designated agent" under 17 U.S.C. § 512 at all times between and during

March 2020 and September 2020.

254.   Sejal Petal is an attorney who was employed at Shutterstock from

approximately 2012 to July 2021. Ms. Patel served as Shutterstock's Head of Intellectual

Property Compliance from approximately 2012 to approximately 2015. Ms. Patel then

became Shutterstock's Senior Counsel for Intellectual Property and Litigation from

**FILED UNDER SEAL**

approximately February 2015 to March 2018. Ms. Patel then became Shutterstock's Assistant General Counsel for Intellectual Property and Litigation from approximately February 2018, a role she remained in until July 2021.

255.   Heidi Padawer Garfield is an attorney who was employed at Shutterstock from approximately 2012 to October 2020. Ms. Garfield served as Shutterstock's Corporate Counsel from approximately October 2012 to approximately February 2015, then became Assistant General Counsel for Intellectual Property and Litigation in February 2015, and Ms. Garfield became Senior Vice President, General Counsel, and Corporate Secretary in approximately August 2016.

256.   Heidi Garfield was a corporate officer of Shutterstock, Inc. in March 2020.

257.   Shutterstock received the March 2020 Letter.

258.   Shutterstock's DMCA designated agent received the March 2020 Letter.

259.   Shutterstock previously stated the March 2020 Letter was not received.

260.   Shutterstock made false statements regarding their receipt of the March 2020 Letter.

261.   A log produced by Corporation Service Company shows Shutterstock received the March 2020 Letter:

| User Name | Action | Date/Time |
|---|---|---|
| Heidi Garfield | Document marked as read | 03/09/2020 02:54 PM EDT |
| Heidi Garfield | Viewed document | 03/09/2020 02:54 PM EDT |
| Sejal Patel | Document marked as read | 03/09/2020 02:47 PM EDT |
| Sejal Patel | Viewed document | 03/09/2020 02:47 PM EDT |
| Sejal Patel | Acknowledged transmittal | 03/09/2020 02:47 PM EDT |

262.   Shutterstock has stated that one copy of the March 2020 Letter was placed on the desk of an attorney at Shutterstock in March 2020.

FILED UNDER SEAL

263.    One copy of the March 2020 Letter was opened and accessed by Shutterstock's then-General Counsel Heidi Garfield on March 9, 2020.

264.    One copy of the March 2020 Letter was opened and accessed by Shutterstock's then-intellectual property lawyer Sejal Patel on March 9, 2020.

265.    Shutterstock continued displaying, distributing, and offering for sale the 111 Photographs after March 2020.

266.    On or about September 14, 2020, Plaintiffs sent a cease-and-desist letter to Shutterstock via Certified Mail at the following addresses (the "September 2020 Letter"):

> Shutterstock, Inc., 350 Fifth Avenue, 21st Floor, New York, NY 10118;

> Sejal Patel, Shutterstock, Inc., 350 Fifth Avenue, 21st Floor, New York, NY 10118;

> Shutterstock, Inc., c/o Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808; and

> Shutterstock, Inc., c/o Corporation Service Company, 2345 Rice Street, Suite 230, Roseville, MN 55113.

267.    Plaintiffs sent a copy of the September 2020 Letter via email to Shutterstock on or about September 17, 2021.

268.    A Shutterstock employee using a fake name responded to the September 2020 Letter claiming the immunities of the 17 U.S.C. § 512(c) safe harbor.

269.    Both the March 2020 Letter and September 2020 Letter demanded Shutterstock ensure those whom they licensed or distributed those images to cease infringement. Shutterstock did nothing to tell those persons to stop using those photographs until March 2021, after this lawsuit was filed.

FILED UNDER SEAL

270.   Shutterstock let stand licenses they illegally granted to Plaintiffs' Photographs even after receiving notices of infringement from Plaintiffs.

271.   On or about October 9, 2020, Shutterstock changed their DMCA designated agent on file with the U.S. Copyright Office to: Legal Department, Shutterstock, Inc., 350 5th Ave., 21st Floor, New York, NY 10118.

272.   Plaintiffs discovered Shutterstock was infringing an additional photograph in December 2020, depicting the Minnesota State Capitol (the "Capitol Photo").

273.   Plaintiffs sent Shutterstock a cease-and-desist letter regarding the Capitol Photo via Certified Mail on or about Dec. 21, 2020 (the "December 2020 Letter"), to:

> Shutterstock, Inc., Legal Department, 350 5th Ave., 21st Floor,
> New York, NY 10118; and
>
> Shutterstock, Inc., Sejal Patel, 350 5th Ave., 21st Floor, New
> York, NY 10118.

274.   Shutterstock received the December 2020 Letter.

275.   Shutterstock continued displaying, distributing, and offering for sale the Capitol Photo after their receipt of the December 2020 Letter.

276.   Shutterstock has claimed to have sourced the Capitol Photo from their Shutterstock Contributor in Bangladesh, using the name "Hane Street," who Shutterstock assigned Contributor ID number 221745405. There were many red flags that the photographs Shutterstock contends to have sourced from "Hane Street" were infringed, including for example dates and locations showing improbable and impossible global travel, photographs said to have been taken in a coastal Taiwanese city depicting vehicles

FILED UNDER SEAL

with license plates from Germany or Georgia (United States) or snowy mountainous terrain, and photographs stated to be in Taiwan showing the Atlanta skyline.

277.   In May 2021, Plaintiffs discovered Shutterstock was still displaying, distributing, and offering to sell some of Plaintiffs' photographs including images which had already been noticed in the March 2020 Letter and September 2020 Letter, and in Exhibit A to the Complaint. Plaintiffs sent cease-and-desist letters to Shutterstock again, but they were slow to take the images down, and in some cases Shutterstock or their partners or distributors are still infringing as of August 26, 2021.

278.   Shutterstock in May 2021 asserted the 17 U.S.C. § 512(c) safe harbor in response to these letters, even though they had both red flag and actual knowledge of infringement, including by knowing these images had been sourced from Shutterstock Contributors who Shutterstock terminated in 2019 but which Shutterstock was still displaying in May 2021, and which were the subject of cease-and-desist letters in March 2020 and September 2020, and already the subject of litigation commenced February 2021.

## IV.   Shutterstock's false claim of the DMCA safe harbor

279.   Shutterstock has developed a reputation for committing and facilitating repeated incidents of copyright infringement.

280.   Shutterstock routinely claims the protections of the 17 U.S.C. § 512(c) safe harbor for the photographs which they distribute, display, and sell.

281.   Shutterstock routinely responds to allegations of copyright infringement by telling the claimant to "submit a DMCA Copyright Infringement Notice."

**FILED UNDER SEAL**

282.   Shutterstock routinely refuses or fails to cease infringement upon actual knowledge of copyright infringement until they have received a notification of claimed infringement under 17 U.S.C. § 512.

283.   Shutterstock's business model precludes them from claiming the DMCA safe harbor.

284.   Shutterstock claims to source images from Shutterstock Contributors.

285.   Shutterstock "approves" and "verifies" Shutterstock Contributors.

286.   Shutterstock has high standards and only accepts a portion of the images submitted to be included in what they call their collection.

287.   Shutterstock can decide to make an image available on its website and has the ability to remove images from license availability and from distribution.

288.   Shutterstock sets aesthetic and quality standards for the imagery they accept, rejecting images for having poor lighting, being out of focus or blurry, "unflattering/awkward camera angles" or other poor composition, or having limited commercial value.

289.   Shutterstock sometimes approves uploads and sometimes rejects uploads.

290.   One of Shutterstock's most common rejection reasons relates to poor composition.

291.   Shutterstock rejects images that conflict with their brand image or business ventures, such as photographs depicting burning flags or monkeys in offices, and photographs from red-carpet events where Shutterstock hires other photographers.

**FILED UNDER SEAL**

292.    When a Shutterstock Contributor uploads imagery to the Shutterstock Contributor website, those images are placed into a review queue. Those images are not copied and displayed on Shutterstock's website until after Shutterstock reviews and approves them.

293.    Shutterstock has the right and ability to control the images they display and distribute.

294.    Shutterstock receives a financial benefit directly attributable to the images they display and distribute.

295.    Shutterstock's assertion of the DMCA safe harbor discourages photographers who have been victimized by Shutterstock's egregious mass-infringing conduct from enforcing their rights as Congress intended them to be able to do.

## CAUSES OF ACTION

### COUNT I
### Copyright Infringement (17 U.S.C. § 501)
### (Against All Defendants)

296.    Plaintiffs incorporate by reference the allegations in the paragraphs above.

297.    Defendants' conduct is in violation of United States copyright law and the exclusive rights held by Plaintiffs.

298.    Defendants' infringement of these rights was and is willful.

299.    Shutterstock's and Crazy House Media's continued unauthorized use of the Photographs after being notified by Plaintiffs that such use is unauthorized constitutes willful and intentional infringement of Plaintiffs' rights.

FILED UNDER SEAL

300.    As a result of Defendants' acts of copyright infringement, and the foregoing allegations, Plaintiffs have suffered damages in an amount to be determined at trial.

301.    Defendants' unauthorized use of the Photographs has caused Plaintiffs irreparable harm, for which Plaintiffs have no adequate remedy at law.

302.    Plaintiffs are entitled to actual or statutory damages under the Copyright Act at their election, and increased statutory damages for willful infringement.

## COUNT II
### False Copyright Management Information (17 U.S.C. § 1202(a))
### (Against Defendant Shutterstock)

303.    Plaintiffs incorporate by reference the allegations in the paragraphs above.

304.    Shutterstock added false CMI to the Photographs.

305.    Shutterstock added false CMI to the metadata of the Photographs.

306.    Shutterstock provided others with false CMI relating to the Photographs.

307.    Shutterstock distributed false CMI relating to the Photographs.

308.    Defendants displayed and distributed Plaintiffs' Photographs with false copyright notices in the metadata and other false copyright management information.

309.    Shutterstock's falsification of CMI was done knowingly and with an intent to induce, enable, facilitate, or conceal infringement.

310.    Shutterstock's falsification of Plaintiffs' copyright management information constitutes violations of 17 U.S.C. § 1202(a).

311.    Each distribution of falsified CMI constitutes a separate and distinct violation of law.

**FILED UNDER SEAL**

## COUNT III
### Removal or Alteration of Copyright Management Information (17 U.S.C. § 1202(b)) (Against Defendant Shutterstock)

312.   Plaintiffs incorporate by reference the allegations in the paragraphs above.

313.   Shutterstock removed and altered Plaintiffs' CMI.

314.   Shutterstock's removal and alteration of Plaintiffs' CMI was intentional.

315.   Shutterstock distributed, displayed, and performed the Photographs or copies thereof knowing the CMI had been removed or altered without the authority of the copyright owner.

316.   Defendants displayed and distributed Plaintiffs' Photographs with removed or altered metadata and false copyright management information.

317.   Shutterstock had reasonable grounds to know that removal or alteration of CMI would induce, enable, facilitate, or conceal infringement.

318.   Shutterstock's removal and alteration of Plaintiffs' copyright management information constitutes violations of 17 U.S.C. § 1202(b).

319.   Each distribution of removed or altered CMI constitutes a separate and distinct violation of law.

## COUNT IV
### Contributory and Vicarious Copyright Infringement (Against Defendant Shutterstock)

320.   Plaintiffs incorporate by reference the allegations in the paragraphs above.

321.   Shutterstock induced, caused, and materially contributed to the infringing acts of others by encouraging, inducing, allowing, and assisting others to copy and use Plaintiffs' copyrighted Photographs, including without limitation through the copying,

**FILED UNDER SEAL**

display, and distribution of the Photographs to third-parties, some who in turn copied, used, and displayed the Photographs again.

322.   Shutterstock had knowledge of the infringing acts relating to the Photographs and had the right and ability to control the infringing acts of those individuals or entities who infringed Plaintiffs' Photographs.

323.   Shutterstock obtained a financial benefit from the infringing activities of individuals or entities who infringed Plaintiffs' copyright in the Photographs.

### COUNT V
### Declaratory Judgment of Non-Eligibility for DMCA Safe Harbor
### (Against Defendant Shutterstock)

324.   Plaintiffs incorporate by reference the allegations in the paragraphs above.

325.   Shutterstock has repeatedly claimed the protections of the 17 U.S.C. § 512(c) DMCA safe harbor, both generally and in response to cease-and-desist letters from Plaintiffs, including over photographs both in suit and not in suit.

326.   Shutterstock is not entitled to the protections of the 17 U.S.C. § 512(c) DMCA safe harbor.

327.   It is likely Shutterstock will continue to infringe Plaintiffs' copyrighted works, and the copyrighted works of others.

328.   Shutterstock's false claim of the 17 U.S.C. § 512(c) safe harbor discourages and intimidates copyright holders, including Plaintiffs, from enforcing their rights, and increases the legal costs and risks to enforce those rights.

329.   Leveraging their false claim of the 17 U.S.C. § 512(c) safe harbor, Shutterstock has made threats against Plaintiffs, including Shutterstock's threat that

FILED UNDER SEAL

Plaintiffs will "die on a hill protected by the DMCA" in this litigation and their demand for attorney's fees.

330.   Plaintiffs are entitled to declaratory relief including an order declaring that Shutterstock is not entitled to the protections of the 17 U.S.C. § 512(c) safe harbor.

331.   Plaintiffs are entitled to equitable relief including an order requiring Shutterstock to cease claiming the protections of the 17 U.S.C. § 512(c) safe harbor.

## COUNT VI
### Declaratory Judgment of Non-Ownership
### (Against Defendant Shutterstock)

332.   Plaintiffs incorporate by reference the allegations in the paragraphs above.

333.   Shutterstock has falsely asserted they are the owner, copyright holder, or authorized licensor for the Photographs in suit.

334.   Shutterstock's false assertion of ownership or rights in the Photographs has caused and is likely to cause in the future confusion, harm, and damages.

335.   Plaintiffs are entitled to declaratory judgment that Shutterstock is not the owner, copyright holder, or authorized licensor for the Photographs, and that Plaintiff(s) are.

## COUNT VII
### Declaratory Judgment of License Invalidity
### (Against Defendants Shutterstock, Archetype, CivicPlus, and Crazy House Media)

336.   Plaintiffs incorporate by reference the allegations in the paragraphs above.

337.   Shutterstock has issued licenses or conveyed rights to third parties including Archetype, CivicPlus, Crazy House Media, and RTB House.

**FILED UNDER SEAL**

338.    Shutterstock has issued licenses or conveyed rights to third parties including HelloRF, TinEye, AvoPix, Wix, Facebook, PuzzlePix, and more.

339.    Shutterstock did not have the right or authority to issue licenses or convey rights to third parties.

340.    Plaintiffs are entitled to declaratory judgment that the licenses Shutterstock issued for the Photographs are invalid.

341.    Plaintiffs are entitled to declaratory judgment that the licenses Shutterstock issued, or rights Shutterstock granted, for the Photographs are not a defense to the purported licensees' infringement liability.

**JURY TRIAL DEMAND**

342.    Plaintiffs demand trial by jury on all issues so triable.

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiffs request judgment be entered in favor of Plaintiffs and against Defendants as follows:

A.    Judgment in favor of Plaintiffs and against Defendant Shutterstock for each and every copyright infringement, falsification and removal of copyright management information, and vicarious and contributory infringement;

B.    Judgment in favor of Plaintiffs and against Defendant Shutterstock for each and every distribution of works with falsified copyright management information;

C.    Judgment in favor of Plaintiffs and against Defendant Shutterstock for each and every distribution of works with removed or altered copyright management information;

FILED UNDER SEAL

D.      Judgment in favor of Plaintiffs and against Defendants Archetype, CivicPlus, Crazy House Media, and RTB House for copyright infringement;

E.      A finding that Defendants' infringement was willful;

F.      A finding that Defendant Shutterstock's contributory and vicarious infringement was willful;

G.      A finding that Defendant Shutterstock's copyright management information violations were willful;

H.      An award of actual damages including Defendants' profits, financial advantages or benefits, and Plaintiffs' losses; or upon election an award of statutory damages of $30,000 per work infringed, per infringer, pursuant to 17 U.S.C. §§ 504-505;

I.      An award of increased statutory damages for willful infringement of $150,000 per work infringed, per infringer, pursuant to 17 U.S.C. § 504(c)(2);

J.      An award of increased statutory damages for willfulness against Shutterstock as to contributory and vicarious infringement for each work infringed;

K.      An award of actual and/or statutory damages, at Plaintiffs' election, for both the removal, falsification, and alteration of copyright management information pursuant to 17 U.S.C. § 1202;

L.      An award of Plaintiffs' full costs, expenses, and attorney's fees;

M.      A permanent injunction against further infringement and CMI violations;

N.      A permanent injunction against Shutterstock's further use, copying, display, or distribution of the Photographs or any versions thereof;

O.      Declaratory judgment of the form requested above;

**FILED UNDER SEAL**

P.     An injunction awarding equitable relief in the form of a constructive trust for the benefit of all victims of Shutterstock's infringement schemes, funded by disgorgement of revenue received by Shutterstock in connection with Shutterstock Contributors or Assets they know to be infringing;

Q.     An injunction awarding equitable relief in the form of an order requiring Shutterstock to conduct a comprehensive intellectual property review of every work they are copying, displaying, distributing, or offering for sale, to ensure that it is not infringing any other persons' rights;

R.     Pre-judgment and post-judgment interest;

S.     An impounding of any and all copies produced by any Defendant in violation of Plaintiffs' rights; and

T.     Such other, different, and further relief as this Court deems just and proper.


Dated:  August 27, 2021                    **TAFT STETTINIUS & HOLLISTER LLP**

                                           By: s/ *Scott M. Flaherty*
                                                Scott M. Flaherty (#388354)
                                                O. Joseph Balthazor (#399093)
                                                Jordan L. Weber (#396769)
                                           2200 IDS Center
                                           80 South Eighth Street
                                           Minneapolis, MN  55402-2157
                                           Telephone:    (612) 977-8400
                                           Fax:          (612) 977-8640
                                           Emails:       sflaherty@taftlaw.com
                                                         obalthazor@taftlaw.com
                                                         jweber@taftlaw.com


                                           **ATTORNEYS FOR PLAINTIFFS**
                                           **ITASCA IMAGES, LLC**
                                           **AND TONY WEBSTER**